Good morning, may it please the court, Cara Hartzler on behalf of Mr. Gomez-Gomez. On the night of Mr. Gomez's arrest, a sensor went off. The agents responded and they found a partial cut in the upper section of a fence. Then they looked around and a little ways away they saw a person lying on the ground. That person had no ladder, no tools for cutting a fence, nothing that is the traditional equipment you'd have to cut a fence. So at trial, our defense was that Mr. Gomez, who was a mentally ill homeless man who believed that people were chasing him, he had been sleeping in this place for two weeks and that because he felt safer in this place and the evidence of the sensors showed that the sensors have not gone off for the past two weeks, that someone else is actually the person who came in, cut the fence. That was the government's theory too, though. The government's theory was that somebody else cut the fence. Correct. So you agreed on that. How we, and your client testified. He did not. Did not testify. So how were you prevented from putting on that defense? We were, we still put on that defense. The problem is we had no independent corroborating evidence that supported our version, our theory of defense. And what this court's case law has said in Stevers and Evans and many other cases is that when you are deprived of the ability to present important, probative, admissible evidence in support. But do we know that this evidence would have, your brief is honest. You're saying we don't know what it would have shown. So how do we, how do we get from there to a constitutional error? Well, first of all, I think we look at the standard. And the standard here is that the government has the burden to show beyond a reasonable doubt that this error was harmless. So first of all. But if it's evidentiary, the government doesn't have to show it beyond a reasonable doubt. And I think that's one of the questions that the government sort of tries to frame this as an evidentiary issue. And the problem is it's not. First of all, it's not because in similar cases like Stevers and Evans, where a critical point, a critical bit of independent corroborating evidence was kept out. They said it's a constitutional right to present a defense, not an evidentiary issue. Here's my problem with those cases. I need you to help me with them. Those are cases in which we were able on review to say this was a critical piece of evidence because we knew what it was. And the judge looked at it and said, I'm keeping it out. Right. Here, you've got a theory. But your theory is if we had this evidence, it might show it might be consistent with our story. It wouldn't corroborate. It wouldn't necessarily prove your story. It would just be consistent with it. Is there a case out there that says that amounts to constitutional error? Well, I think the other case is my problem is because we're able to look at it and say, oh, my gosh, that would have been really good for the defendant. Well, here we don't know. Let's let's take Evans, for instance. And Evans, the defendant still testified. He still put on his same exact defense. He still said, I am a United States citizen. What was denied was the late registered birth certificate. Right. But which which we had and could look at and say, oh, my gosh. Right. If you could have put that in, that would have been really terrific evidence for the defense. So what do we do with the speculative nature of the evidence here? Well, I want to point out, first of all, and just make clear that we are not asking we're not arguing about the range of the censors. All we are asking was at this point on our appeal is that the judge should have admitted evidence about when the censors went off. And we knew all of that evidence. This was not speculative. The government had turned it over. The government. OK, thank you. That's right. The government said, look, the only time the censor went off in the two weeks before was this one time for repairs. They never said that there was a national security concern with that. We knew exactly what the evidence was. And on appeal, all we're arguing is that that's the evidence that should have come in. Well, the evidence that would have come in was that it went off two weeks before and on the at the time that these border agents responded and found your client there. It would have shown that in the last two weeks. No, no. I'm just saying you're saying that's the evidence that should have come in. Yes. That it went off. It went off at the time. It went on at the time. Border agents responded to it and found your client. And the last time was two weeks before. And I thought, though, and just help me understand, because I thought you were also arguing that it went off near where the the fence got cut. There was a lot of discussions about the range where it was. We asked for discovery on that. There were arguments during trial on appeal. All that, aren't you? You're not arguing that all we're arguing on appeal is that we should have been able to get the evidence in showing when the sensor went off, that it went off the night of the arrest. And that other than that, in the last two weeks, the only other time it went off was for a repair. So how does that help you? It helps us. I understand how the range stuff might help you, but tell me how that helps. So basically, to be to be quite candid, Your Honor, had we been able to get that evidence in, we likely would have put Mr. Gomez on the stand. He would have testified that he believed that he was being chased, that he was looking for a safe place to sleep, and that he had slept there for the last two nights. So if that evidence had come in, that the sensor hadn't gone off in those last two weeks, it would have corroborated the fact that his sleeping location was outside. Or I'm sorry, it would have corroborated that he was not the one who set off the sensor the night of the arrest. But that's why I have a difficulty, because the government's theory was that somebody else cut the fence. Sure. And so we, somebody else may have set off the sensor. Why does that matter to you? Wasn't the government's theory, they were in it together? Correct. Exactly, Your Honor. And that's the key difference. That is the key. Right. So the government's theory is, when it became clear that Mr. Gomez didn't have the tools, he didn't have the ladder, he didn't have anything, then the government kind of shifted its theory. And it said, OK, our theory is that it was a two-man job and that Mr. Gomez was working with the person who had the ladder and the tools and everything. And that person escaped back. So at that point, it was even more important for us to get this evidence. Where does the ladder come into the case, by the way? Where does the ladder? All right. I mean, all we know is that somebody had a tool to cut. We don't know whether somebody had a ladder. Well, the cut was actually at the upper part of the fence. It was about, I believe, 16 to 18 feet. So you couldn't have cut it without a ladder. OK. In other words, the whole, the government's theory was someone else had come in with a ladder, with tools, and that that person, Mr. Gomez, were working together. And that when the sensor went off or they saw someone coming, the person with the ladder and all the tools and everything else jumped back over the fence. And Mr. Gomez wasn't able to get back. See, I want to get back to, because you're making a more limited argument than I thought you were. The district at below, you did argue to the trial judge, I want to be able to get in stuff about the range of the sensors and where they're placed or whatever. And the judge said, gee, if that's what you want to do, I'm just not going to let them put in any sensor evidence at all. I'm just going to keep it all out because I don't want to get caught up in the range and the national security issues and whatever. And the judge made that ruling in light of the fact that you wanted to get into sensor range evidence. Now you're saying the judge erred because you really don't want to get into sensor range evidence. Well, Your Honor, we actually, we argued for the sensor range. We never got it. The government defied the court order, never turned it over. So even after the judge said, all right, I'm not going to make them produce this. We still asked to have the evidence about when the sensor was activated go off. So in other words, when we didn't get what we wanted at first, then we changed our argument. And what we're, what we argued second is exactly what we're arguing now on appeal. Tell me where that is in the record. Uh, Your Honor, I apologize. I, maybe I could bring it on. I can look for it on rebuttal. Right, exactly. So basically what the bottom line with all of this, Your Honors, is that the evidence of when the sensors activated was an important, independent corroborating fact of this defense. The government never argued that it was a national security issue. And so at this point, all we want, we wanted this to go to the jury. This was a fact for the jury to consider. And by the judge keeping it out, essentially the jury was deprived of that important, independent corroborating evidence that would have changed potentially the course of this case. At a minimum, we believe that the government can't show beyond a reasonable doubt that it wouldn't have changed the course. And when you said that, take a look at ER 116. Okay. That's why I'm having some difficulty because the judge says it's the government's choice. Do you want the sensor evidence or not? And the government says no. And then it says, okay, now the defendant, what do you, what's your choice? And so I'm trying to figure out. Well, but then you, then the defense at that point say, well, we still want to go forward with the evidence. Exactly. But show me where, that's where I'm having trouble finding. Exactly. There's a, there's a provision somewhere in the record that says we want to be able to weaponize. Exactly. We want to be able to weaponize it. Was that before page 116? Your Honor, if you don't mind, I would be glad to look for this on rebuttal. I know early on, you want all this stuff. I would be, I would be happy to find that. Before I save a little time for rebuttal, I just want to talk briefly about one sentencing issue. I want to talk about the Rule 32 issue. Because in that situation, what happened was that the district court came into the sentencing hearing and the district court had this transcript from a prior sentencing hearing. No one had ever seen it. The defense didn't know it existed or that it actually was in transcript form. And the judge proceeded to rely on this on about a quarter of the sentence, of the pages in the sentencing transcript. That was a real problem. Not only does this court's case law say in Gray, in War, in Baldrick, that you have to give advance notice of anything like that that you're going to rely on during sentencing, this actually caused a problem because we didn't know in that case what the guidelines range was in the Texas case. In that case, the guidelines range was actually 100 to 125 months. So the judge there gave a low-end sentence. By contrast, the judge here, the guidelines range was 41 to 51 months. So rather than giving a low-end sentence as the judge did in Texas, the district court here actually gave a sentence that was almost double of the high end of the guidelines range. It was an extreme upward variance. Had we known what that guidelines range was, had we had advance notice of this case, we could have made an excellent argument that, look, you shouldn't take that 100-month sentence so seriously because the guidelines range there was vastly different than it was here. And that's why we think that that made a difference. But the guideline range in the Texas was much greater. It was 100 to 125 months. The judge gave a low-end sentence of 100 months. In our case, the guidelines range was 41 to 51 months, and the judge gave 99 months. And not having that guidelines range from the prior sentencing hearing, not knowing what it was, that made a huge difference in how we would have argued that case. So if the court has no... I reserve your time. I will reserve my time. Thank you. And I'll find that quote, Your Honor. Good morning. May it please the court. Nicole Reese Fox, the United States. The district court did not err in concluding that excluding all evidence of the seismic sensor that alerted the night of the defendant's arrest did not deprive him of his constitutional right to raise a defense. The district court determined that that was the appropriate sanction for the government's nondisclosure of the range of the sensor. And the district court properly concluded that the defendant's case was, in fact, stronger without all of that sensor evidence, because all of the sensor evidence was highly supportive of the government's theory of the case. Well, at one point in time, the district court clearly said, hey, why aren't you giving this? This seems like this is really important and supports his theory of the defense. And then on the motion for reconsideration, and when the district judge was approached to review in camera what the range was, the district judge in a curious statement said, well, what good does it do me to see that? I'm not quite sure why the district court did that. It seems like he should have seen it and then made a determination based on that. And I'm troubled by that part of the record here, because I think that affects sort of what happened here, because the district court judge doesn't really know what that evidence said and just kind of said, okay, I'm going to not put that in. And then when the defendant, and you'd correct me if I'm wrong, then said, no, judge, we want it in, and I think he uses the term, we want to weaponize it, because we think it supports our theory of defense. The government's trying to say some other person, he was working with some other person, and that's not the case. He'd been sleeping there all along. All the thing about the sensor and the location. Now it seems like that is more limited, but I'm just concerned as to why that isn't harmful and why it's just harmless when we have a lot of case law that says, you know, fundamental standards of relevancy require admission of evidence which tends to prove that the person other than defendant committed the crime that is charged. It says error cannot be harmless where it prevents the defendant from providing an evidentiary basis for his defense. And then in Espinoza, it says if the evidence that someone else committed the crime is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but could afford the accused every opportunity to create that doubt. And then we have Lopez Alvarez, which says due process concerns are magnified because the district court failed to examine the sensor. Or I'm sorry, I'm saying that the due process concerns are magnified because the district court failed to examine the sensor evidence in camera. And Lopez Alvarez says when evidence is excluded on the basis of an improper application of the rules, due process concerns are still greater because the exclusion is unsupported by any legitimate justification. So there's a lot baked in there, Your Honor. I'll start with the district court's theory of materiality was not that the evidence was helpful to the defense. What he said is this evidence, the range of the sensor is going to tell the defense whether or not they can raise the sleeping between the fences defense. That is, it's material to their determination of whether it's helpful or not. But then once the government disclosed that the sensor alerted the night that the defendant was arrested but had not alerted during those two weeks when he claimed he was sleeping in the very same spot, the district court determined that actually the sensor evidence was not helpful to the defense. Add to that, may I? Yeah, go ahead. Add to that the fact that the AUSA actually specifically informed the court that the defendant was arrested in the immediate vicinity of the sensor. That devastates the claim that the defendant was sleeping there in the very same spot for two weeks prior. If the defendant was arrested in the range of the sensor, he couldn't have been sleeping there for two weeks because the sensor never activated. So he was actually able to raise a defense in this case that he could not as a factual matter have raised had the district court admitted all of the sensor evidence. But we don't know. I mean, the range, I mean, the judge didn't let any of that in. Right? Yes. And so I'm just trying to figure out, the defendant says it would have been helpful to him to bring in the sensor evidence because it would have shown that he says he's been sleeping there the last two weeks in that area and the sensor never alerted. And it would not have been helpful to that defense because he was apprehended in the range of the sensor. But that range never, that never came out. I mean, the judge was never... It's speculative either way, right? He could have moved into the range of the sensor and moved out of it. But so, but why would, you know, he's arguing that if I had this, I might be able to put on a different defense or put on a better defense. Why doesn't the judge at least have to make a record in camera of what it might have shown? And I would submit that the prosecutor's comment that the defendant was apprehended in the immediate vicinity of the sensor is sufficient for this court to determine that the evidence would not have been helpful to the defense. That's not evidence. That's a comment. It's a representation. What the judge didn't do is determine what the facts were. And to the extent that this court thinks that the question here of whether he was deprived of a defense as a constitutional matter rests on what the range of the sensor is, I would suggest the court could remand to the district court to view the evidence in camera and to determine whether the evidence would have been helpful or not. Can I ask a different question? Because I'm, I'm a little confused about the record as I read through the hearing. The defendant's saying, we want to get in the sensor evidence in terms of range. And the government's saying, we don't want to give you that information because it's a matter of national security and everybody goes back and forth. And the judge says, I'll be Solomon. I'll split this baby down the middle. And here's what I'm going to do. The government, you can't put in any sensor evidence, period. I'm looking for someplace after that where the defense says, Oh no, your honor, we have a problem with that. Is there, where is that in the record? Yes. It is right after the court orders the disclosure. And then the, tell me where it is in the record. Yes. It is at one, I believe it's one, one 13, your honor. But that's before the judge announces his solution. That's my problem. I understand up until the time the judge announces his solution, they're fighting very hard to get everything in and you're fighting very hard to keep the range out. Once the judge announces his solution, it turns to the government and says, take it or leave it. Either I'm going to let it all in or none of it in. Does the defendant then say, no, your honor, that creates a problem for us. No, but, but at ER 110, this is when the government before, but I think that the district court has pretty much signaled at that point, if there's no talk of sensors, then what's the difference he can maintain his theory and the defendants fighting that and fighting that or defense attorneys are fighting that. And then he's saying, well, this isn't going to harm your defense. And that's where they come up with the theory, which I think for the first time they say they want to actually weaponize the evidence. And then this district court issues, it's ruling. And I don't think that the defense re-raises that argument, but I'm also not sure that they would have been required to. Fair enough. So, so once again, so you say, I'm sorry, you don't think it rises to a constitutional proportion that it's harmless. That's both, both are true, but if we think it might be this, we can send it back to the district court to view, do the in-camera review that he should have done in the first place. To the extent that this court thinks that the question turns on the range of the sensor, that is knowing whether the defendant. And so the defendant is saying now that the range may not be necessarily as important as just that it went off. So I want to understand the difference between your positions because it's a little confusing in light of everything. Without information, without setting aside the range, all of the sensor evidence was highly probative of the government's theory of the case and completely undermined the defendant's case. Here, the evidence was the defendant was apprehended within minutes of the sensor being alerted. He claimed he had been sleeping in his usual sleeping spot for two weeks, yet the sensor never alerted. And so the only reason the government thought the range was relevant was because it was the defendant's only chance to rebut that theory. The evidence as it stood without the range was only supportive of the government's case and did not at all help the defendant's case. The reason the district court said it was material during the discovery phase of the defendant to determine if he had a defense at all, if his sleeping defense was viable. See, and I'm trying to get back to, and I know you've identified it, but the difficulty is I don't find any place where the defense says we would just like to introduce the sensor, the fact that the sensor went off, without saying we'd also like to accompany it with the range. I agree, Your Honor. And now on appeal, they're saying we don't really care about the range. So really, all we're worried about is whether the sensor went off. I also did not understand that nuance of the argument because I thought, too, that it was all about the range. I'm not aware of any place below where the defense said, we want this evidence to come in without the range. I don't believe there's any point in the record where the defense says that's what they want. So it was clear at the time, I guess, that the sensor went off near where the fence was cut? Not where the fence was cut, Your Honor, where the defendant was apprehended, which was about 10 to 20 yards from the fence. And how far is that from where he says he was sleeping? It's about 10 to 20 yards from where the cut in the fence was to his sleeping spot. And the sensor alerted around 3 a.m. and he was apprehended at 3.15 a.m. And why did you charge him with illegal re-entry? Why did you charge him with attempted illegal re-entry? The difficulty in these cases is that when a defendant has not made it all the way far enough into the United States, it's hard to prove the entry and we have to prove a specific intent to enter free from official restraint. How high a fence to get over into this area? The first fence was about 8 to 10 feet. So isn't that some, I mean, I have the same question. Isn't that pretty good evidence that he intended to enter that area? I think that we would have had the same burden to prove the element. But with attempted re-entry, you've got to show the specific intent, where re-entry, you could probably infer it from the fact that he was found in the United States, couldn't you? Yes, but then we get, I mean, this area of the law, as your honors well know, is very complicated and it's difficult when a defendant has not crossed, you know, miles into the United States, it's more difficult to prove his intent. And so we charge them as attempts. So how far, how much time passed between the censor going off and then the law enforcement arriving at the scene? That timing is not in the record. What we know is that at three o'clock when the censor alerted, one of the officers was already there at the fence. The other one arrived. They examined the fence and found the defendant within 15 minutes. And he did not have any tools? No, your honor. And the government's theory of the case never was that he was the person who did the cutting, because that would have been an improbable theory. There were two sets of footprints. And so I think from the beginning, I don't think this two-man job theory was new. Isn't it though? I mean, I guess his defense was, hey, somebody else was trying to do it, but it wasn't me. And that was the defense he raised. And I would submit that that defense was far stronger. The idea that he was just sleeping and somebody else cut the fence was far stronger without the jury knowing that on this night, the censor alerted. But during those two weeks when he claimed to have been sleeping in the exact same spot, no censor was triggered. I see amount of time. The court has no further questions. I have two minutes, but I don't want to use it, that's fine. Does anybody else? If there are further questions. I'd like for you to address the sentencing. Yes, your honor. The district court did not violate rule, I assume you mean the Rule 32 point? He didn't violate Rule 32 by citing the transcript from the prior case. He read out loud in open court the portions of the transcript that he was relying on. And that gave the defense and the defense attorney the opportunity to address it. And that's all Rule 32 requires. As you can see, the defendant did not have that in advance of the sentencing hearing. That's correct, your honor. Although he was there at the initial sentencing hearing. It wouldn't give you a lot of time to prepare though, would it? No, your honor. But the district court read in open court for the defense, the portions that he was relying on. And even if this court believes that he should have provided that evidence ahead of time, the fact that he read it in open court and the fact that he relied on a variety of 3553A factors, not just on this prior transcript, renders any error harmless. He did mention it a few times, but I think he also... Why is it fair to the defendant? The judge shows up with a transcript. I suppose the defendant should know he was sentenced previously and the defense lawyer should know. But we don't know that the judge is going to rely on it extensively. And you say, well, they should have on the spot been able to figure out how to deal with it. Isn't the whole idea to make sure they see it beforehand? Well, Rule 32 in this court and the Supreme Court have specifically said that Rule 32 does not require disclosure in advance. That disclosure at the time of the sentencing hearing and depending on the circumstances is sufficient. And here where the district court read the pertinent portions and where in fact they were really the same considerations that underlie the sentence. It was about incapacitation and deterrence. And the defense counsel was well aware that those were the issues that were going to be pertinent to the sentencing. And I don't have any substantive problem with the sentence. I mean, it's, this is a repeat offender and the judge sentences accordingly. I'm just trying to figure out whether it was fair to the defense for the judge to... And we have a case, United States versus war. So how do you, I mean, it seems like the court there held that this court violated the rule when it relied on a Bureau of Prison study when sentencing war without notifying war of it before the sentencing hearing. I think I have two responses on war. Number one, the Bureau of Prison study that was cited in that case was a completely independent study having nothing to do with the defendant. So there was no way that the defense was on notice that some study about juveniles and whether they're going to re-offend would come up in the sentencing hearing. Here we're talking about the transcript of a sentencing that covered the very same issue. But defense didn't even know that it existed. Presumably they knew it existed if they knew he was sentenced previously. I was able to pull it from Pacer. So presumably they could have. But even setting this aside... You read it beforehand? No, I have it now. Oh. I was able to pull it in preparation for the argument. Where did it come from? Who provided it to the court? I think he went on Pacer and pulled it himself to see what considerations led to the 101th sentence. I'd note that in an 18-page transcript, 16 pages of it are about whether a different enhancement would apply based on a prior conviction. There's only one or two pages that the district court read from. Those are actually the only two pages that talk about any of these. So he did read the entirety of the relevant portion. But setting all of that aside, this is reviewed for plain error. The defense never said, Your Honor, we'd like an opportunity to go look at that transcript and prepare a response. And so on plain error, the question is whether... And that's the second point I wanted to make about Warr, is that Warr found that the court violated Rule 32 in relying on this BOP study, but that there was no prejudice. Because one, the document was discussed and quoted at the hearing itself. Two, the court relied on well-known and common sense propositions from the report. And three, the court would have imposed the same sentence. But I'm wondering if he would have... He was looking at the sentence that he got in the Texas case, right? I see. Now I am out of time. May I respond? No, I get to control this. Okay. Thank you. You get to answer. So... But that was based on him being released in San Francisco the prior... He was released in San Francisco, is that right? Yes, that's correct. And there's some confusion. I think the defense is arguing now, or saying they would have argued, had they known that the judge was going to be focused on this, that the defendant here, who apparently suffers from mental health issues, might have been confused as to why they released him in San Francisco and didn't deport him and thought that maybe he could stay. And so... And here, you could tell the judge really relied on that sentence, on what happened after that. So I guess that's what's troubling to me, that he uses this... They didn't really have a chance to look at that and were caught completely off guard. And to say it didn't affect, I'm not quite sure about that. The facts about the release to San Francisco was all in the PSR. These are not new facts that the defense was not aware of. It seems that that affected what happened in the transcript that the district court was relying on. It did not, because that occurred after this case. What happened was, after the Texas sentencing, after he served the sentence, that's when he was sent to San Francisco. So that hadn't even occurred yet at the time of the transcript. So the issue about San Francisco was fully aired at the hearing. The defense counsel was fully on notice about that. So there's nothing new from the Texas transcript that would have bore at all on that point. And I would just urge again, that this is on plain air in the district court. To the extent it relied on that transcript, the sentence that he imposed would not have been different. Thank you. Just to follow up briefly on the sentencing issue before we get away from that. We acknowledge we're on plain air, but I think Your Honor is exactly right, that war is directly on point here. And I just want to clarify that- Okay, more. The court said- I'm sorry. The court found no plain error. So tell us why your case is better. First of all, I just want to point out that in war, they basically said, and I apologize, I should go back, but the principle in war was very clear that you can't bring in new things. No, and the principle was clear, and then they looked at it and said, but it's not plain error. Tell us why this wasn't plain error. I just want to clarify that the Supreme Court case law that the government is referring to actually refers to a different subsection of 32 that deals with downward departures. So war is actually directly on point, and there's no Supreme Court case law that overcomes that. Now, as to your issue of plain error, basically, I mean, I think, first of all, as I pointed out, there was this whole issue that counsel didn't know what the guidelines range was. We didn't know what else was in that transcript. Maybe things in that transcript could have been helpful to us. Okay, now you've had it for two years. So tell us- Well, we found out about the guidelines range. Tell us what you would have done differently. We could have realized this- well, I guess we couldn't have realized until the sentencing hearing how much that San Francisco issue was very important to the judge. But I guess- That was in the PSR. That was in the PSR. I think the other thing, Your Honor, is that because our client was mentally ill, it's really unrealistic to think that he was able to somehow convey to us ahead of time, hey, here's what happened. And the real thing that I think was concerning is that the district court judge relied on this to completely impugn our client's credibility. He said, oh, well, your client allocuted this last time. And because of that, I don't believe him. I don't think he's sincere. He used the word sincere over and over. If we had known that, we could have maybe prepared our client and said, you know what? Now the judge is going to ask you, why are you sincere this time when last time you said basically the same allocution? So can I- Sure. Can I ask you to return to the record? Absolutely. So let me phrase my question a little bit more specifically. Sure. Your side is down there saying, Judge, we want to be able to get in the fact that the censor went off in its range. Right. And the judge goes back and forth with various, you know, here's arguments from both sides and then says, all right, here's my solution. They can't put in any censor evidence at all. I'm going to exclude all censor evidence. Is there a point after that at which your side says, no, wait a minute. We would, if we could only just get that the censor went off, we'd be satisfied with that. I looked through the record hastily during that table. I didn't find anything specific. I don't think that- And I understood what your argument was. We were entitled to both. Yeah. You preserved that well. I don't think that changes anything. I also think that at that point, the district judge had did, as Your Honor said, he had sort of made this Solomonic split the baby thing. And I don't think that, you know, any objection would have necessarily changed his mind. But even, I don't think it was necessary. So why doesn't this change that you're limiting the basis of your contention here on appeal? Well, I think first of all, Your Honor, I'm not sure that we necessarily, you know, there had been a lot of arguments about this before the trial court and the district court was trying to move things along. I'm not sure there was an opportunity for us to object, assuming that we had been able to say, hey, just let us get the activation history in. I'm not sure that would have changed. You objected right after. I mean, right after the judge announced a solution and the government said, all right, we'll live with that. The defense counsel got up and raised seven objections. And the judge turned them all down. But surely you could have said, hey, judge, just let us put in that the censor went off. That won't bother the government, will it? I think that at that point, the judge had reached the conclusion and said, this is the only way I can resolve this. So I don't think it would have changed the outcome. And so, but that's why I want to just ask before we conclude here, because Ms. Rice was saying all the censor information or what you now say would have made a difference really wouldn't have made a difference. So I want to understand why you think it would have, because she said it pointed to him being right there. Well, first of all, I don't think it's the government's job to say whether this would have made a difference or not. It's the jury's. It's a jury decision. Second of all, I think that the government actually, before it said, well, he was arrested in the immediate vicinity, it said several times the opposite. It said that he wasn't arrested in the immediate vicinity or that it would stipulate that he wasn't. So the government was equivocating about this. And most important, Your Honor, I think that the government, as this court pointed out, wasn't even willing to give over the evidence saying whether that was true or not. So essentially what you've got is a situation where the government is basically making a factual statement and the district judge, without requiring any supporting evidence of that, used it to shut down the defense's entire argument. And for those reasons, Your Honor, we think that the judgment should be reversed. Thank you. Thank you. The case of United States v. Jorge Gomez-Gomez is now submitted.
judges: Murguia, Hurwitz, Guirola